IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


NANCY JACKSON,                    )
                                 )
                Plaintiff,        )
                                 )
vs.                              )        Case No. 07-1384-MLB
                                 )
MICHAEL J. ASTRUE,               )
Commissioner of                  )
Social Security,                 )
                                 )
                Defendant.        )
_____ )


RECOMMENDATION AND REPORT


     This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.
The matter has been fully briefed by the parties and has been
referred to this court for a recommendation and report.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's decision
to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the

correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984
(10th Cir. 1994). Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by
such evidence that a reasonable mind might accept to support the
conclusion. The determination of whether substantial evidence
supports the Commissioner's decision is not simply a quantitative
exercise, for evidence is not substantial if it is overwhelmed by
other evidence or if it really constitutes mere conclusion. <u>Ray
v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989). Although the court
is not to reweigh the evidence, the findings of the Commissioner
will not be mechanically accepted. Nor will the findings be
affirmed by isolating facts and labeling them substantial
evidence, as the court must scrutinize the entire record in
determining whether the Commissioner's conclusions are rational.
<u>Graham v. Sullivan</u>, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The
court should examine the record as a whole, including whatever in
the record fairly detracts from the weight of the Commissioner's
decision and, on that basis, determine if the substantiality of
the evidence test has been met. <u>Glenn</u>, 21 F.3d at 984.

The Social Security Act provides that an individual shall be
determined to be under a disability only if the claimant can
establish that they have a physical or mental impairment expected
to result in death or last for a continuous period of twelve
months which prevents the claimant from engaging in substantial

2

gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not

to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

## II.  History of case

On February 22, 2007, administrative law judge (ALJ) Robert J. Burbank issued his decision (R. at 19-30).  Plaintiff alleges disability beginning April 27, 2005 (R. at 19).  Plaintiff is insured for disability insurance benefits through December 31, 2010 (R. at 21).  At step one, the ALJ found that plaintiff did

4

not engage in substantial gainful activity since April 27, 2005, the alleged onset date (R. at 21). At step two, the ALJ found that plaintiff had the following severe impairments: status post resection of left lung cancerous tumor. The ALJ further determined that plaintiff's symptoms related to an adjustment disorder with depressed moods is non-severe (R. at 21-22). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 22). After determining plaintiff's RFC (R. at 23), the ALJ found at step four that plaintiff is able to perform past relevant work as a waitress (R. at 29). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 30).

**III.  Did the ALJ err in his step four findings, including his RFC findings?**

Plaintiff argues that the ALJ failed to conduct the proper analysis in support of his RFC findings. Plaintiff further argues that the ALJ failed to make the necessary findings of fact required at step four. At step four, the ALJ found that plaintiff could perform past relevant work as a waitress (R. at 29).

At step four, the ALJ is required by Social Security Ruling (SSR) 82-62 to make findings of fact regarding: 1) the individual's residual functional capacity, 2) the physical and mental demands of prior jobs or occupations, and 3) the ability of the individual to return to the past occupation given his or

5

her residual functional capacity.  Henrie v. United States Dep't of HHS, 13 F.3d 359, 361 (1993).  Thus, at the third or final phase of the analysis, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one.  At each of these three phases, the ALJ must make specific findings.  Frantz v. Astrue, 509 F.3d 1299, 1303 (10th Cir. 2007);  Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996).

Phase one of the step four analysis, the RFC assessment, "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence."  The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.  The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7.  SSR rulings are binding on an ALJ.  20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).  When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his

6

RFC conclusions are not supported by substantial evidence.  <u>See</u>
<u>Southard v. Barnhart</u>, 72 Fed. Appx. 781, 784-785 (10th Cir. July
28, 2003).  The ALJ's decision must be sufficiently articulated
so that it is capable of meaningful review; the ALJ is charged
with carefully considering all of the relevant evidence and
linking his findings to specific evidence.  <u>Spicer v. Barnhart</u>,
64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003).  It is
insufficient for the ALJ to only generally discuss the evidence,
but fail to relate that evidence to his conclusions.  <u>Cruse v.</u>
<u>U.S. Dept. of Health & Human Services</u>, 49 F.3d 614, 618 (10th
Cir. 1995).  When the ALJ has failed to comply with SSR 96-8p
because he has not linked his RFC determination with specific
evidence in the record, the court cannot adequately assess
whether relevant evidence supports the ALJ's RFC determination.
Such bare conclusions are beyond meaningful judicial review.
<u>Brown v. Commissioner of the Social</u> <u>Security Administration</u>, 245
F. Supp.2d 1175, 1187 (D. Kan. 2003).

     An ALJ can comply with the phase two and three requirements
of the step four analysis if he quotes the VE's testimony with
approval in support of his own findings at phases two and three.
<u>Doyal v. Barnhart</u>, 331 F.3d 758, 760-761 (10th Cir. 2003).  At
the second phase of the step four analysis, the ALJ must make
findings regarding the physical and mental demands of the
claimant's past relevant work.  When the ALJ essentially skips

the second phase of the step four analysis by not making any

findings regarding the physical and mental demands of claimant's

past work, either as performed or as it is generally performed in

the national economy, then the case shall be remanded in order

for the ALJ to make the specific factual findings regarding the

demands of claimant's past relevant work.  Clardy v. Barnhart,

2004 WL 737486 at *6 (D. Kan. Apr. 5, 2004).

        The ALJ made the following RFC findings for the plaintiff:

> ...the undersigned finds that the claimant
> has the residual functional capacity to for a
> range of light work.  The claimant is
> additionally restricted by occasional
> postural and manipulative limitations
> associated with upper body weakness secondary
> to surgery.

(R. at 23).  Later in the opinion, the ALJ indicated that he

considered the opinions of the lower level state agency medical

consultants, but found that the evidence of treating sources,

together with the testimony and observation of the claimant,

indicated that the claimant was slightly more limited than

originally thought (R. at 28).  However, the ALJ failed to

indicate what lower level state agency consultant's opinion he is

referencing.  A review of the list of exhibits does not list any

state agency medical consultant who offered opinions in regards

to plaintiff's physical RFC.  Furthermore, the ALJ failed to

indicate how the evidence supported the RFC findings made by the

ALJ.  Thus, the ALJ failed to provide a narrative discussion

indicating how the evidence supports his RFC findings, in clear violation of SSR 96-8p.

The ALJ included in his RFC findings the statement that plaintiff was "restricted by occasional postural and manipulative limitations associated with upper body weakness secondary to surgery" (R. at 23).  However, the ALJ is silent on which postural and manipulative limitations are associated with upper body weakness secondary to surgery.  Postural limitations include the categories of: climbing, balancing, stooping, kneeling, crouching and crawling.  Manipulative limitations include reaching all directions (including overhead), handling (gross manipulation), fingering (fine manipulation), and feeling.  Form SSA-4734-BK(12/2004).[1]  The RFC assessment is a function-by-function assessment of plaintiff's abilities and limitations. SSR 96-8p, 1996 WL 374184 at *3.  The ALJ failed to specify which postural and manipulative limitations are associated with upper body weakness secondary to surgery.  Therefore, the ALJ failed to provide the necessary function-by-function assessment of plaintiff's abilities and limitations.

As noted above, at step four, the ALJ found that plaintiff could perform past relevant work as a waitress (R. at 29). However, at phase two of the step four analysis, the ALJ failed

_____

[1]A copy of this form, commonly used in social security disability cases, can be found in the record of <u>Minnick v. Astrue</u>, Case No. 08-1091-MLB (Doc. 6-5 at 518-519).

to make findings regarding the physical demands of plaintiff's past relevant work as a waitress.  The ALJ simply made the conclusory statement that given the physical and mental demands of plaintiff's past work, including exertional and nonexertional factors, and claimant's own testimony, plaintiff could perform past relevant work as a waitress, as it is generally performed (R. at 30).  However, the ALJ is silent on the postural and manipulative demands of the plaintiff's past relevant job of a waitress.

At step four, the ALJ must determine whether a claimant, given the limitations imposed by their impairments, can perform previous work, either as the claimant actually performed it, or as generally performed in the national economy.  20 C.F.R. § 404.1560(b)(2); SSR 82-61, 1982 WL 31387 at *1-2.  The job of waitress (DOT code 311.477-030, R. at 150) requires the ability to frequently reach and handle, and the ability to occasionally finger, according to the <u>Selected Characteristics of Occuupations Defined In the Revised Dictionary of Occupational Titles</u>, (SCO)(U.S. Dept. of Labor, 1993 at 365).[2]  The ALJ found that plaintiff is restricted to occasional postural and manipulative limitations associated with upper body weakness secondary to surgery.  However, the ALJ failed to indicate whether this

--------

[2]A frequent activity is an activity that exists from 1/3 to 2/3 of the time.  An occasional activity is one that exists up to 1/3 of the time.  SCO at C-3.

restriction was meant to include the ability to reach and handle. If plaintiff is limited to only an occasional ability to reach and/or handle, then plaintiff would be unable to perform the job as described in the SCO.  Furthermore, plaintiff described her past work as a waitress as work requiring her to reach for 3 hours a day, and write, type or handle small objects for 4 hours a day (R. at 106).  Both requirements exceed 1/3 of an eight hour workday, or an occasional ability to reach or handle.

Thus, the ALJ's failure to indicate which postural and manipulative limitations are associated with upper body weakness secondary to surgery makes it impossible to determine if plaintiff can perform the work of a waitress as defined in the SCO, or as plaintiff performed it in the past.  In the alternative, if the ALJ intended to limit plaintiff to only occasional reaching and/or handling, then plaintiff could not perform the job of a waitress either as described in the SCO or as plaintiff previously performed it.

The ALJ erred by failing to make findings at phase two of step four regarding the physical and mental demands of plaintiff's past work.  As the most recent case law makes clear, the failure to make such findings requires remand for proper step four analysis.  Bowman v. Astrue, 511 F.3d 1270, 1271-1273 (10th Cir. 2008); Frantz v. Astrue, 509 F.3d at 1303-1304; Parnell v. Astrue, 2008 WL 2622874 at *6-9, Case No. 07-1292-MLB (D. Kan.

11

July 1, 2008; report and recommendation at 14-21); Kilpatrick v. Astrue, 559 F. Supp.2d 1177, 1182-1185 (D. Kan. 2008)(Belot, D.J.).  This case highlights the need for the ALJ to comply with SSR 96-8p when making his RFC findings, and for the ALJ to make findings at step four regarding the physical and mental demands of plaintiff's past work.  This case should therefore be remanded in order for the ALJ to make proper step four findings.

**IV.  Did the ALJ err in finding that plaintiff's symptoms related to an adjustment disorder was non-severe?**

The burden of proof at step two is on the plaintiff.  See Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993)(the claimant bears the burden of proof through step four of the analysis).  A claimant's showing at step two that he or she has a severe impairment has been described as "de minimis." Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997); see Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988)("de minimis showing of medical severity").  A claimant need only be able to show at this level that the impairment would have more than a minimal effect on his or her ability to do basic work activities.[3]  Williams,844

---

[3]Basic work activities are "abilities and aptitudes necessary to do most jobs," 20 C.F.R. § 404.1521(b)[416.921(b)], including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgement, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting." Social Security Ruling 85-28, 1985 WL 56856 at *3; Langley v. Barnhart, 373 F.3d 1116, 1123 (10th Cir.

F.2d at 751.  However, the claimant must show more than the mere
presence of a condition or ailment.  If the medical severity of a
claimant's impairments is so slight that the impairments could
not interfere with or have a serious impact on the claimant's
ability to do basic work activities, the impairments do not
prevent the claimant from engaging in substantial work activity.
Thus, at step two, the ALJ looks at the claimant's impairment or
combination of impairments only and determines the impact the
impairment would have on his or her ability to work.  Hinkle v.
Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).

A claimant must provide medical evidence that he or she had
an impairment and how severe it was during the time the claimant
alleges they were disabled.  20 C.F.R. § 404.1512(c),
§ 416.912(c).  The evidence that a claimant has an impairment
must come from acceptable medical sources including licensed
physicians or psychologists.  20 C.F.R. § 404.1513(a),
§ 416.913(a).  Evidence from other medical sources, including
therapists, nurse-practitioners, and physicians' assistants, may
be used to show the severity of an impairment and how it affects
the ability to work.  20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1).

In this case, a mental RFC assessment, dated January 5,
2007, was prepared by L. Michael Garrett, a licensed clinical
psychotherapist, who treated plaintiff from October 26, 2005

---

2004).

13

through December 28, 2006 (R. at 288-290).  Mr. Garrett found
that plaintiff had no limitations in 10 categories, moderate
limitations in 8 categories, and marked limitations in 2
categories: (1) the ability to perform activities within a
schedule, maintain regular attendance and be punctual within
customary tolerances, and (2) the ability to complete a normal
workday and workweek without interruptions from psychologically
based symptoms and to perform at a consistent pace without an
unreasonable number and length of rest periods (R. at 288-289).

The record also contains a mental status examination by Dr.
Barnett, a licensed psychologist, who evaluated plaintiff on
September 28, 2005 (R. at 265-267).  Dr. Barnett made the
following findings:

> Ms. Jackson does not appear to suffer from
> any cognitive limitations that would
> interfere with employment. She showed no
> difficulty with attention or concentration
> during the interview. She appears cognitively
> capable of both simple and complex work
> tasks. She relates a positive history of work
> relationships and was appropriate and
> positive with me during the interview. Her
> only source of income at this time is work
> disability and she appears capable of
> managing her own funds.

(R. at 267).

On October 12, 2005, a psychiatric review technique form was
filled out by Dr. Adams, who after reviewing the file, including
the evaluation by Dr. Barnett, found that plaintiff's mental
impairment was not severe (R. at 269, 281).  This report was

14

prepared prior to the treatment and subsequent opinions by Mr. Garrett.

A request for medical advice was sought from George Stern on February 8, 2006. He indicated he reviewed the evidence in the file and affirmed the assessment of October 12, 2005 as written (R. at 285-286). Mr. Stern had before him treatment records from Horizons Mental Health Center and Mr. Garrett (R. at 252-262), but did not have before him the RFC opinions expressed by Mr. Garrett in January 2007. Both Dr. Adams and Mr. Stern were nonexamining medical sources.

The ALJ discussed these opinions as follows:

> As for the opinion evidence, the undersigned finds that the opinion of Mr. Garrett as discussed previously and while thorough and useful, is not given controlling weight based on the evidence. In evaluating the assessment given by Mr. Garrett, the undersigned considered testimony and reports of the claimant and documentary evidence from other treating and examining sources. The undersigned found that Mr. Garrett's assessment was not supported by any other medical sources including the opinion of Dr. Barnett who found, as discussed earlier, that the claimant was not suffering from any cognitive limitations that would preclude employment and had no difficulty with attention or concentration, simple and complex tasks, and personal relationships (Exhibit 7F).
>
> Since Mr. Garrett's opinion is not entitled to controlling weight, it must be analyzed to determine the appropriate weight that can be given to this opinion...
>
> Although Mr. Garrett is [a] licensed clinical

15

> psychotherapist, the undersigned finds from
> the evidence that while he was a primary
> treating source for claimant's depression, he
> was not an exclusive treating or examining
> source. From the evidence it appears that the
> nature and extent of the treatment
> relationship between Mr. Garrett and the
> claimant was limited to focusing her on
> cognitive behavioral therapy techniques
> rather than on whether her depression
> affected her functioning (Exhibit 5F). The
> undersigned additionally considered whether
> Mr. Garrett should be recontacted since his
> opinion was not accorded controlling weight,
> but has determined that recontact is not
> necessary since the undersigned has found the
> information received from this source as
> adequate for consideration but are not
> persuasive on the level or degree of
> claimant's residual functional capacity.

(R. at 28-29).

The ALJ gave little weight to the opinions of Mr. Garrett because his assessment was not supported by any other medical sources, including the opinion of Dr. Barnett (R. at 29).  Mr. Garrett's opinions were also not supported by two state agency consulting medical sources, who reviewed the records, but did not examine or treat the plaintiff.

However, the record does show that Mr. Garrett's assessment had at least some support in the record which was not considered by the ALJ.  Mr. Garrett, when he filled out the mental RFC form on January 5, 2007, gave plaintiff a GAF of 55 (most recent and for the year) (R. at 290).  On October 26, 2005, Mr. Garrett gave plaintiff a current GAF of 45, indicating that plaintiff's

16

highest GAF for the last year was 70 (R. at 261).[4]  Not mentioned

by the ALJ was an intake assessment, dated June 9, 2005, in which

Darlys Willer, a licensed specialist clinical social worker,

found that plaintiff had a current GAF of 50 (R. at 244).

    Plaintiff was thus given the following GAF scores:

(1) June 9, 2005      Darlys Willer          GAF: 50 (current)
(2) October 26, 2005  L. Michael Garrett     GAF: 45 (current)
(3) January 5, 2007   L. Michael Garrett     GAF: 55 (most recent)

Standing alone, a low GAF score does not necessarily evidence an

impairment seriously interfering with a claimant's ability to

_____

    [4]GAF (global assessment of functioning) scores can be found
in the Diagnostic and Statistical Manual of Mental Disorders.
The scores in this case represent the following:

> 61-70: **Some mild symptoms** (e.g., depressed
> mood and mild insomnia) **OR some difficulty in
> social, occupational, or school
> functioning...but generally functioning
> pretty well, has some meaningful
> interpersonal relationships** (emphasis in
> original).

> 51-60: **Moderate symptoms** (e.g., flat affect
> and circumstantial speech, occasional panic
> attacks) **OR moderate difficulty in social,
> occupational or school functioning** (e.g., few
> friends, conflicts with peers or co-workers).

> 41-50: **Serious symptoms** (e.g., suicidal
> ideation, severe obsessional rituals,
> frequent shoplifting), **OR any serious
> impairment in social, occupational, or school
> functioning** (e.g., no friends, unable to keep
> a job) (emphasis in original).

Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)
(4th ed., text revision, American Psychiatric Association 2000 at
34) (emphasis in original).

work.  A claimant's impairment might lie solely with the social, rather than the occupational sphere.  A GAF score of fifty or less, however, does suggest an inability to keep a job.  For this reason, such a GAF score should not be ignored.  Lee v. Barnhart, 117 Fed. Appx. 674, 678 (10th Cir. Dec. 8, 2004).  In this case, plaintiff had GAF scores ranging from 45-55 from June 9, 2005 through January 5, 2007; in addition, Mr. Garrett, after over 1 year of treatment, opined that plaintiff had marked limitations in the ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; and in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (R. at 288-289).

The step two requirement is generally considered a de minimis screening device to dispose of groundless claims; thus, reasonable doubts on severity are to be resolved in favor of the claimant.  Samuel v. Barnhart, 295 F. Supp.2d 926, 952 (E.D. Wis. 2003).  Mr. Garrett's RFC assessment and GAF scores provide evidence which would support a finding that plaintiff had severe mental impairments, i.e., that plaintiff's mental impairment would have more than a minimal effect on his or her ability to do basic work activities.  The ALJ improperly ignored the GAF score of 50 by Darlys Miller, another treating source.  Such a score

18

suggests an inability to keep a job, and thus would clearly suggest that plaintiff has a severe mental impairment.  Thus, contrary to the findings of the ALJ, Mr. Garrett's assessment has some support in the record from another treating source which should be considered when this case is remanded.

Upon remand, the ALJ should keep in mind that the opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight over the views of consulting physicians or those who only review the medical records and never examine the claimant.  The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).  When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports, not the other way around.  Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations.  Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  The ALJ must provide a legally sufficient

19

explanation for rejecting the opinion of treating medical sources
in favor of non-examining or consulting medical sources.
Robinson, 366 F.3d at 1084.

As noted above, the ALJ chose not to recontact Mr. Garrett.
In Robinson, the court held that if the ALJ concluded that the
treating source failed to provide sufficient support for his
conclusions about plaintiff's limitations, the severity of those
limitations, the effect of those limitations on her ability to
work, or the effect of prescribed medication on her ability to
work, the ALJ should have recontacted the treatment provider for
clarification of his opinion before rejecting it.  366 F.3d at
1084.  In addition, SSR 96-5p states the following:

> Because treating source evidence (including
> opinion evidence) is important, if the
> evidence does not support a treating source's
> opinion on any issue reserved to the
> Commissioner and the adjudicator cannot
> ascertain the basis of the opinion from the
> case record, the adjudicator must make "every
> reasonable effort" to recontact the source
> for clarification of the reasons for the
> opinion.

1996 WL 374183 at *6.  Therefore, on remand, the ALJ should
consider recontacting Mr. Garrett if the ALJ cannot ascertain the
basis for Mr. Garrett's opinions from the record.

IT IS THEREFORE RECOMMENDED that the decision of the
Commissioner be reversed, and that the case be remanded for
further proceedings (sentence four remand) for the reasons set
forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on January 13, 2009.


                         s/Donald W. Bostwick
                         DONALD W. BOSTWICK
                         United States Magistrate Judge